I'd like for the attorneys to step up to the podium. I'd love for you to state your name, tell the court who you represent, and approximately how long your argument will take. Good morning, counsel. Good morning, Your Honors. My name is Michael Lubeck. I'm with Cooney & Conway, and I represent plaintiffs, appellants in this case. I believe my opening, probably in the 15, 17-minute range. Good morning, counsel. Good morning. Michelle Lederizzi for defendant Motorola. I believe 15 minutes, Your Honor. Okay, very good. Mr. Lubeck, why don't you proceed with your argument. Thank you, Your Honor. May it please the court, counsel. Good morning. Again, my name is Michael Lubeck for the plaintiffs, and I have a brief, briefly to begin. I'd like to begin by saying that this is not a case that we can prove. It's not a case that we can prove. It's a case that we can prove. It's a case that we can prove. This is important to the pleadings because as the science has progressed, the law must progress as well. The law must evolve. And the pleadings here are negligence pleadings. These are negligence causes of action. Common law established elements that must be applied to the facts and circumstances of the 21st century. That's really the context of this appeal, and there are four points that I believe are important and germane to that. First is this appeal is up here on a 2615 motion on the pleadings. I believe that's improper. Second, there's the issue of workers' compensation exclusivity, which does not apply. Third, there's the issue of proximate cause, which is almost always, and certainly in this case, a question of fact. And finally, there's the issue of duty, and that is a negligence cause of action, and it's on the pleadings as interpreted by the laws of Texas and Arizona. One idea that sort of permeates all these arguments and all these points is the idea that this is here on a 2615 motion on the pleadings, and the standards are very familiar about all well-plead allegations being deemed true and all inferences being drawn in favor of the plaintiff. It's that second one that's the problem. In the context of the defendant's argument, they set up an either-or scenario. It's really a false dichotomy. You've got either the father was injured for purposes of workers' compensation, therefore theoretically implicating exclusivity, or the father was not injured for purposes of workers' compensation exclusivity, therefore proximate cause in fact is impossible. It's that second therefore that's the problem here, because that's a question of fact. That is something that is a presumption. It's an inference drawn against the complaint itself, and it's a presumption that a workers' compensation injury and proximate cause in fact are the identical and same thing, and they're not. And the way we rebut that presumption is with scientific and medical evidence. But we cannot present that on a 615, and the court cannot consider it on a 615, so that presumption becomes irrebuttable. And then you take that and you plug that back into that dichotomy, and it looks like there are only two choices, but it's not all inclusive. There is a third option. If you take that irrebuttable presumption out, there is a third option, which is there is no cognizable workers' compensation injury to the father, yet there is proximate causation in tort, and that is exactly what we allege. Well, but isn't it pretty clear that in the Third Amendment complaint, the plaintiffs were trying to plead around Rodriguez? Well, I think the pleadings changed, because the way, well, Rodriguez was pled without an injury. The Rodriguez analysis, if you look at it in the context of particularly the court's focus on preconception tort and what that means, basically misunderstanding that, that was really fostered by the way that the complaint was drafted in that case. So what we tried to do is we tried to hone the complaint to really subtract those basically distracted issues from it. Both Rodriguez and Peters make the assumption, they adopt the irrebuttable presumption, Your Honor, that workers' compensation, that there was an injury, first of all, under the law, and that it has to constitute proximate cause, or that's the only way it can constitute proximate cause. That's what underlies both of those decisions, and so that's really why we altered the pleadings here to try and keep the court focused on what is really important here, two separate issues. One is the pleading in the law as it would stand as a question of law being duty, and then proximate cause as a question of fact. So that was really the purpose, and these pleadings have been evolving, and the operative complaint here is the fourth, and the only amendment that really made substantive changes to it was the third, and that was basically facts and parties. But it's basically stayed the same with the intention of trying to focus the court on what we believe are the proper issues, which is that there's no workers' compensation issue here, and it really is a question of fact. I mean, wouldn't, before you move on, wouldn't ultimately the plaintiff's position be that even if there was an injury to a male employee in the form of a transitory change to his reproductive system, that wouldn't make a difference in terms of the child's independent injury? That's exactly right, Your Honor. That's the exact point. Alleging an injury to the father is not a necessary allegation in our complaint for the child. It doesn't need to be there. And so what the defendant is really trying to do is say, no, that's a necessary allegation, but it's not. You're exactly right. There doesn't need to be an injury. It doesn't need to be alleged. Whether there was an injury to the father or not, as a matter of fact, and proximate causation is immaterial. So that's exactly right. And you have to discard that syllogism, that false dichotomy. You cannot decide that one of these propositions is true simply because the other one is false. You have to consider them separately. That's where Peters and Rodriguez got tripped up, I think. Primarily they bought the presumption and they used that or they used that disjunct as the way to foreclose the causes of action. So you look at the workers' compensation and you look at proximate cause. I think proximate cause can be discussed very quickly. It's almost always a question of fact. It certainly is here with the science. And the question is not, do we allege how did this particular chemical cause this particular injury? Did it change the cell? Did it change the DNA? That's evidence. We don't have to plead evidence. What we did plead is how you get from Motorola's conduct in using those chemicals to the injury. And I would just direct the Court to look at probably the first 150 allegations in our complaint are all facts that go to ideas of Motorola's knowledge about the danger of those chemicals, how they work, that they used them anyway, that they put the parents in the position to use them, told them how to use them, didn't protect them, made false misrepresentations about how safe everything was. And that led to the exposure. And it led to exposure at levels that were reproductively toxic, which led to the injuries. That's what proximate cause is pleading. So for purposes of this appeal, at least, it seems like Motorola concedes that in utero exposure for a pregnant female employee is sufficient. That is correct, Your Honor. In fact, what we consider or what we call the female mediated cases are still proceeding in the lower court. We've got 25 of them going. This brings up really the discrete issue of when it's a male employee as opposed to a female employee. So that's why this is here. So, yes, you're right. Motorola essentially has conceded in the sense that they lost the motion below in the other cases. And one of the ideas when you're thinking about duty, I'm jumping all over the place, but one of the ideas when you're thinking about duty here, you get tangled up in this idea of preconception tort. Courts use it in a lot of different ways. And a lot of times it's imprecise. But the way that you need to think about it, the way that it needs to be thought about, is it's preconception conduct that leads to an injury to a fetus once it exists that leads to a cause of action that arises when the child is born. So all of these cases about viability, they're really misapplications and misdirections. These children were born. They're viable. They're alive. They have causes of action. And so the real question that you need to focus on, that I believe the court needs to focus on in terms of duty, is this notion of preconception conduct leading to postconception injury. That is an idea that has been part of tort law, negligence actions for a long, long time. Has any appellate court in the country ruled in favor of the father in this exact situation? There was just recently, well, not an appellate court. There was an appellate magistrate in Washington. I know this is cited to other cases. No. No. I'm not aware. Most of the, in fact, all of the rulings at this point have been lower court, except just the affirmation in Peters. So it really has not been addressed, and it really has not been addressed specifically in Arizona or Texas. So, you know, it's really a matter of evolving law and evolving technology. But that notion of preconception conduct and postconception injury, someone cannot suffer an injury until he or she actually exists. So when you talk about an in utero injury, that's the earliest that anyone can suffer an injury. This is not about an injury in the air. So the question is, and the Delgado case in Texas is very important, because he enunciates this very clearly, that the child's cause of action comes into existence at the moment of her birth. The time of the event that led to the injury that brings about the cause of action is wholly immaterial. So with that idea, you look at the duty tests in Texas and Arizona. Texas uses, of course, the ability test, which is familiar to us here in Illinois. Arizona uses a relationship-based test, and those are labels. Both states give you a list of factors to consider when deciding in Texas, is the injury foreseeable? In Arizona, you're deciding, is the relationship sufficient to impose a duty? And if you write those down and you put them right next to each other, they're basically the same. Well, I don't know. If you look at Quiros, the take-home asbestos case, and the restatement provisions that the plaintiffs were invoking in that case, that is hazardous conduct on the land that injures people off the land, the Arizona Appellate Court, at least, was pretty definite about this would be an expansion of Arizona law. And the oral argument in the Supreme Court seemed to be heading that way. So isn't that an analogous opportunity for the Arizona courts to say, yeah, the law is evolving? Well, I think that the law is always evolving. Every case that we cite here is a matter, or there is a situation at a time when the court brought the law from where it was to where it was going. I think what's important about the Quiros case, or two points that are important, is that was solely a premises liability cause of action. Well, that's negligence. There are a lot of elements of premises liability cause of action that were unique to the Quiros, and that those plaintiffs in that case waived the notion of special relationship. So that idea of sufficient relationship was never really addressed. So those factors are not really addressed. But that's really what's up before us here. Is the relationship between Motorola and this child sufficient to generate the duty or to support the duty? I mentioned that the factors that they use really line up, but there's one under the relationship standard that I think is important when you look at Arizona, and it talks about the closeness of the connection between the conduct and the injury. And in Arizona, when you look at the Rogam case, the Kenyon case, you're talking about physician-patient privilege, and here we're talking about an employer-employee relationship. What is it that tracks it down to the child? The common factor is that it's about reproduction. The doctors in those Rogam cases are treating for reproduction, reproduction issues. And here, in our complaint, these are all allegations about reproductive chemicals, reproductive risk, and reproductive injury. Having a child is the point of reproduction. That is the closeness of the connection. That is what ties this. It's not a premises case. And there is a relationship there. I'd like to make this a little different issue. Do you believe that it would be inconsistent for us if we ruled one way in the Arizona case and a different way in the Texas case? Or is a law in both forms so similar that that would be not possible? Well, I wouldn't presume to get inside your head. I'm just saying, as a matter of the law that you cited, do you see any differences in how Texas and Arizona might approach these issues? Not really substantively. Because the substance of the duty analysis are really those particular factors. And you do have to look at the facts. You do have to do some sort of evaluation of the facts to determine whether those factors are satisfied. And as I said, I think that there's likelihood of injuries on both sides. Social utility is the same as public policy. Superior knowledge is the same as the status of the parties and things. All of those factors, though, they all draw from, they all reflect, and they all are grounded in a public policy, the public policies of these states, which are essentially the same, and the same as ours, in terms of providing causes of action for people who are injured and acting in derogation of those common law causes of action very narrowly, particularly with respect to statutory schemes like workers' compensation. For example, in Arizona, we talk about the Arizona Constitution and the open courts provision, and that has some teeth in Arizona. Because when Arizona tried to enact its workers' compensation law, it did it. It was declared unconstitutional because of that provision. And they actually had to go back and amend their constitution to allow workers' compensation legislation, very narrow, to be enacted. And in terms of the public policy, not only of Arizona but of Illinois, Motorola is an Illinois business, principal place of business, and we have got two fathers in two different plants in two different cities in two different states around the same time doing basically the same job who both have children with birth defects. And there's not just two, there's many, many more. All of this traces back to Illinois. I don't see how Illinois law would apply to that issue. Procedural, but that's not procedural. Well, it's not procedural, but just in terms of the public policy and holding people. But the public policy, I think, why wouldn't we look at the public policy in Texas and Arizona? I don't understand why Illinois would trump that considering causes of action. Well, I think you're right. It certainly wouldn't trump it, but I do think that it does act in harmony with those when you think about Illinois. With respect to this section 2615 motion, you're saying we're supposed to apply Illinois law and you've pled sufficient facts to survive this motion to dismiss. Is that your argument? That is correct. Okay. And the pleading is Illinois. Yes. Anything? Thank you very much. Unless there are further questions, we just pray that this court to reverse and remand for further proceedings. Thank you, Mr. Ullman. Good morning. Good morning. Counsel, may I please report, if I may? Michelle Odorizzi for Defendant Motorola. Could I get your last name, please? O-D-O-R-I-Z-Z-I. Odorizzi.  Odorizzi. Very good. Thank you. Proceed. Counsel started by saying that the law has to evolve. And can I just ask you, Ms. Odorizzi, these are not amplifying. Okay. If you could keep your voice up. Okay. Thank you. Counsel says the law has to evolve here. But you're an Illinois court being asked to decide what Arizona and Texas law should be. You can't decide what the law should be. You can only decide what it is. Well, unless there is controlling authority in either jurisdiction that supports your position, isn't an Illinois court applying a foreign state's law entitled to say this is what we think the foreign court would do? To make a prediction, yes, Your Honor, based on the law. And if you make a prediction, we think the prediction is clear that neither state would recognize them. But I commend to you the Delaware court's approach was to look at this and say these are very sensitive issues of public policy. And neither court has recognized this kind of a tort in this circumstance. And we should not be the first. And the Delaware court. This is an evolving issue, apparently, and a cutting edge, in that these cases apparently percolated a long time. And now many years later, from when the conduct in question occurred, these cases are now coming up to appellate courts or to trial courts. So there isn't a lot of law to base it on, both in Arizona and in Texas. But there is law. Like this situation. Right. Your Honor asked about the male-mediated cases. And, in fact, there are three courts that have decided against these cases. There's the New York Appellate Division, which we cite those cases. The California Court of Appeal. And, of course, the Delaware Supreme Court involved in precisely these cases. No one has recognized them yet. And no one has recognized them for a reason. Because, and particularly under the circumstances alleged here. Because plaintiffs allege, counsel referred to it, the causation issue. But plaintiffs allege that the employers, the employees, were not injured on the job. They suffered no direct injury, according to them. That isn't just a, that was a tactical pleading. I think Your Honor is right. After the Peters case, they changed their allegation to say there was no direct injury. But that leaves us with wondering, what is the problem here? We don't know what the causal mechanism was, supposedly, here. But, you know, I'm a little confused by Motorola's position on this. Because Motorola takes the position that if anything happened to the parent in the workplace that ultimately caused an injury to a third party, that the third party is barred by the exclusive remedy provisions of workers' compensation law. And if you change the facts a little bit and say, these chemicals didn't cause changes to the employee's reproductive system, but rendered the employee susceptible to blood clots. And so the father is out driving one day, and one of these blood clots in his system hits his brain, and he causes an automobile accident. That third party isn't relegated to workers' compensation. No, Your Honor. Even if it's his son sitting in the passenger seat. Well, Your Honor, if you are injured because of the injury, this is a different kind of injury. Because this is an injury to his reproductive system, whether it's temporary or permanent. It doesn't really matter. It's an injury to him. And that injury, according to them, has to be the reason why, for them to be able to bring a claim against Motorola, has to be the reason why the child was injured. So it flows directly from the workplace injury. The father's, the chemicals cause the father to be depressed or suicidal or more aggressive than he normally would, and he injures somebody in his home. That person has to go through workers' comp. I don't know. I think that's a different kind of situation. And in that kind of situation, certainly if it's not a member of his family, workers' comp is viewed as a bargain with the worker and his family. So you have these cases, derivative cases. Right. So derivative claims are loss of consortium and wrongful death. Right. It's not when the family member suffers their own personal injury. I haven't seen any cases like that in the workers' compensation context, which say the third party, whether it's a family member or anybody else, who suffers their own personal injury is relegated to the workers' compensation system. Although in the derivative cases themselves, Your Honor, Arizona in particular views the loss of consortium as an independent tort against the individual family member, and still it is barred under the workers' comp. So we think it would apply. But more basically, I don't think you have to reach that issue because you have the question of duty and whether a duty is owed to the as-yet-unconceived offspring of the male workers. But it is to the in-utero children of female workers. So you're saying that males are going to be treated under the law differently than females, which is an interesting situation in that our laws are supposed to treat male and females without discriminatory effect, and that can be done here. Well, but, Your Honor, the difference is that in the in-utero case, the fetus is actually present on the premises and gets the exposure that way. So the argument in those cases is that they are being directly impacted. But in both circumstances, it's exposure through the mother's bloodstream, right? Whether it's a male, whether it's the woman who is pregnant or the man who transmits the chemicals to his wife. I mean, it's through the mother's bloodstream in both cases, isn't it? But in one case, from a legal standpoint, when you have a fetus there, first of all, you have some certainty. You know what you're talking about. You know that you have a pregnant woman in your employ. And you have the fetus on the premises. And that has changed the analysis in the cases, in the workers' count cases. But here what you're talking about is, according to plaintiffs, the male workers were not injured. So what you're talking about doing is imposing a duty on the employer, not only to provide this employee with a reasonably safe workplace in order to avoid injuring him, but to protect people who have not yet been conceived who may never be conceived. But they'd have the same duty for the females. And couldn't there be a situation where there was a female who had a child but was not in utero at the time of her employment and could become sick later? If they had a preconception tort claim and claimed that the mother was somehow injured before she conceived a child, then it would be exactly the same as the preconception tort claim involving a man. Exactly the same. And both of those should be barred, because neither the case law that you see in Arizona, the take-home liability asbestos case that Your Honor referenced, those show that you just do not have a duty to these people who are injured, supposedly because you do something to one person and then somebody who doesn't even exist may someday be injured. It's just a bridge too far, and it's imposing a duty on employers that has too many burdens down the road. It's essentially limitless liability. No, but here Motorola was aware of the potential effects. So they say. So they say. So because of that, you can't ignore that. And so there was a duty, and that's why Motorola did certain things and made certain accommodations for their employees in order to avoid certain things happening to them or happening to their offspring. Right now we're only at the pleading stage, so we don't know what the evidence might show. We are, exactly, Your Honor. But if you look at Arizona law, in Arizona foreseeability is not a factor in the duty analysis. But it is Texas law. It is in Texas. It's one of many factors. So we could find one and not the other. Arizona is, I think we went under either one, but Arizona is different because it does not have foreseeability as a factor. And in the Carrillo's case, counsel says they were just going on a premises liability. But if you look at footnote one of the opinion, they say, well, if you're talking about the employer-employee context, the child in that case who's at home who is never on the premises, which is our situation here, they are a stranger to the employment relationship, and therefore there is no duty. And that's exactly what applies here. So if the child isn't on the premises, then Motorola has no responsibility? Has no duty. Oh, is no duty to protect that. You said there's no nexus unless they're on the premises. Right. There's no relationship, and therefore no duty owed. And if there's no duty, then there cannot be liability for failing to care for them. And you have complex questions once you say something other than employer, you have to provide a reasonably safe workplace. If you have an independent duty, which is what they're saying and which they have to say, to the as yet unconceived offspring of people, what do you do when those are in conflict? What do you have to do to take care, to make sure you're protecting that person? When you're dealing with the employee, what if the employee doesn't want to use protective measures? Well, that would come out in the case. I mean, those are fixed. Well, but why, if you owe a duty to that unborn, unconceived child, why does what the employee does have anything to do with it? You still owe that duty. So you have to navigate all of those issues. But, see, what you're talking about, as I understand your argument, is that you could plead the duty, but if, for example, the employee did not use protective measures, contributory negligence might bar the claim. But, Your Honor, the claim is on behalf of the child, not the employee. That's the problem. I mean, if you owe a direct duty to this as-yet-unconceived child, then it appears. That's typical third-party practice, contributory negligence. Right. Not proximate cause. I mean, all things that are brought out after the pleading stage. Right. But these are all issues that, and it's the reason why the California cases that refuse to recognize this kind of a tort say there are just too many complicated issues. There are too many issues of what the burdens are on the employee, on the employer. And then, at the end of the day, what the burdens are in terms of litigation and how limitless this liability can be. Because if a child can sue, a grandchild can sue. Anybody — Well, that, you know, that's not before us. So, you know, Parade of Horribles does not really do it. But this very case, Your Honor, does show a Parade of Horribles in the sense that if you look at the complaint, you will see that there are any number, anyone with a birth defect, anyone whose father may have worked at some time at Motorola brought these claims. But they still have to prove their case. So, you know, that's, to me, you can't separate one from the other. They still have to prove their case. And you might say they can't prove it. But in a fact-pleading jurisdiction, they also have to plead facts. And what they've pleaded is nothing about what the causation mechanism is. And in the normal case, we would look and say, well, causation is obvious. But here they've deliberately, as a tactical reason, said, no, the father wasn't injured at all. So we don't know what the mechanism is. Well, he wasn't injured. The type of injury doesn't come under the worker's compensation. That's not what the complaint says. That's their argument. It's their argument, but it is not what the complaint says. The complaint says, as a matter of fact, the person, the employee was not injured, not directly injured. That's right. It's a different, it's not under the worker's comp, it's a negligence claim. But they still haven't explained what the mechanism is. And as to Mr. Fincer, they've been incredibly cagey about their allegations and what their theory is because Mr. Fincer left Motorola's employee the year before his daughter was born. So we don't know when he left under their complaint, when she was conceived, what their theory is. So they haven't linked it together to state a claim. And it's all a matter of proof. It's just as Simon is saying. It's not like Motorola has to guess from the complaint what plaintiffs say the cause of injury is. You know what the cause of injury is. It's a matter of whether the plaintiffs can prove it. We absolutely have to guess, Your Honor, because we don't know what the mechanism is supposed to be. So we don't know if it's. The mechanism is like in any case that involves expert testimony, the expert will tell you. If you want the plaintiffs to plead, well, the science has evolved over the past five years so that we know that workplace exposure can last for five years, and so the offspring conceived within that, I mean, that's all evidence, isn't it? Well, Your Honor, I think that in the ordinary case it might be, but when you go and plead that the father was not directly injured, then you've created a mystery as to what the situation is. And I think under those circumstances, and if fact pleading means anything, they had to at least plead some basic facts about their theory. Well, what would you suggest then? If they had, what would be an example? Are you saying it's impossible or? No. Just tell us what your theory is. We've had some rumblings about what the theory is in their brief, that maybe there's a temporary alteration or maybe there's kind of a take-home toxicity here. They have a million different theories running around, but they don't plead any of them. They don't tell us what the time frames are. So we don't really know how to deal with this, and I should point out this is seven years now that we've been litigating this case, and they've gone through five complaints. They ought to at least have a theory by now. Now it's before us, so we'll get a response. Anything further, Ms. Izzo? No, he'd ask you to affirm the judgment below. Thank you. Thank you. Mr. Ludbeck? I think her position is you haven't plead sufficient facts. On causation. On causation. We have plead sufficient facts on causation because pleading causation is, again, not about pleading this chemical, this birth defect, cell changes, things like that. That's the Barham case, which is still unsighted for proximate cause after 21 years. What we allege and what needs to be alleged is taking us from Motorola's conduct to the injury. And so what we've alleged, we've alleged each step here. And if we begin, these chemicals are reproductively toxic. It's known. It's known. There's scientific literature. That's paragraph 85 of our complaint. Motorola knows this. That's at least a lot of paragraphs that talk about what Motorola knew and how they knew that through the SIA and different studies. And they were actually told by NIOSH in 1981 to keep women away from solvents, women away from solvents, but that solvents were reproductive toxins. So Motorola knows this. Motorola chooses to use these chemicals in its fabs. Motorola hires the parents.  Motorola gives these chemicals to the parents. Motorola tells them how to use the chemicals. Motorola gives them insufficient protection. Motorola doesn't warn them of the reproductive dangers. Motorola doesn't use environmental controls. Motorola makes misrepresentations to persuade these people that this is safe and they have nothing to worry about. And as a result of that, there is exposure to these chemicals. And it is exposure, and there are facts about dermal and different things, different ways that exposures occur. That leads to the next step, which is that these exposures were at levels that were reproductively toxic, which leads to the next step that the children were born with injuries through the reproductive process. Every complaint, I think, that I've ever written and you've ever reviewed always has a paragraph near the end that says, as a direct and proximate cause of the foregoing, the plaintiff suffered an injury. That's the final step of proximate cause. But what we have to allege is what comes before. And that's the first, between paragraph 70 and about 165 of our complaint. And because it is on the complaint, you do have to take a look at the complaint pretty closely. And that's why we devoted a big portion of the opening brief to really set out where those facts could be found so that you could take a look at them and see that they really do support the elements of not just the proximate cause, but also of duty. How do you get around the fact that Arizona doesn't recognize the foreseeability? Again, I think the key idea there is that foreseeability and relationship are a couple of labels, but the factors used to determine whether something's foreseeable or something is there's a sufficient relationship, those factors are basically the same. And, you know, if an injury is foreseeable in Arizona, that doesn't mean there's no duty. I mean, you know, it's not, again, it's not an either-or situation. So if an injury is foreseeable in Arizona, as long as the relationship test is satisfied, and the same facts can satisfy, do satisfy really both of those tests, I believe that we have to look at the substance behind those labels as set forth by the courts, the factors, Golden Spread in Texas and Scanly in Arizona, and then look at our allegations and see how they fit in there. Just on a final note, the idea of limitless viability and what can be done, what can be done. You know, what can be done for the male employee who's working at the plant is the same thing you should be doing for the female employee that's working right next to him. So the burden is not too great. This does not limit this liability. This is an evolving law. This is a negligence action, stepping up to face the facts and circumstances and the proof of the 21st century. Thank you. Thank you very much. Mr. Lubeck, Mr. and Ms. Ulrisse, the court would like to thank you for your briefs and your arguments. You presented this court with a very interesting problem. This case is going to be taken under advisement, and this court is going to stand in recess for about five minutes.